UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AL-KAHWATI ENGINEERING, INC.,

      Plaintiff,

v.

AGC FLAT GLASS NORTH AMERICA, INC.,

      Defendant.

                               /

Case No. 2:16-cv-10759

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [22]
## AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [20]

Defendant AGC Flat Glass North America, Inc. provides, among other things, engineering services to General Motors. In 2015, Defendant entered an agreement with Plaintiff Al-Kahwati Engineering, Inc. to provide services on certain programs. A year later, Defendant terminated the agreement. Plaintiff subsequently brought suit alleging breach of contract. Now before the Court are Defendant's Motion for Summary Judgment (ECF 20) and Plaintiff's Cross-Motion for Summary Judgment (ECF 22). The Court has reviewed the briefs, and finds that a hearing is not necessary. *See* E.D. Mich. LR 7.1(f). For the reasons listed below, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment.

## BACKGROUND

Plaintiff is an engineering company that provides design release services for glass components in vehicles. ECF 22-2, PgID 328. Plaintiff's sole owner, shareholder, and employee is Muhsin Al-Kahwati. *Id.* Plaintiff entered a contract to provide services for

certain programs[1] to Defendant. ECF 22-3, PgID 334. The contract identified four programs, all to be completed for GM. *Id.* The parties added two additional programs for GM, and Plaintiff may have also performed around 40 hours of service for Toyota. ECF 22-2, PgID 330. Al-Kahwati was Plaintiff's only agent performing work under the contract. ECF 20-2, PgID 195.

On at least two of the GM projects, Al-Kahwati worked with GM employee Sonja Russell. ECF 20-4, PgID 230. During the pertinent time, Russell's title was Engineering Group Manager, and her responsibilities included overseeing the Flat Glass team. ECF 20-4, PgID 230, 231. After a series of alleged communication issues with Al-Kahwati, Russell asked Defendant to remove Al-Kahwati from all GM programs. ECF 20-9; ECF 20-4, PgID 226, 238, 245. The request was rare: Russell had only done something similar one other time in her twenty-seven years at GM. ECF 20-4, PgID 247. In light of the request, Defendant gave Plaintiff a formal, two-week notice of termination due to a significant alteration to the project. ECF 20-5, PgID 253, 264; ECF 20-6.

**STANDARD OF REVIEW**

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify specific portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

---

[1] The contract refers to the collective programs as the Project, a defined term. To avoid confusion, the Court will refer to the individual subunits as programs even though they might more properly be referred to as "projects." When the Court uses the term "Project," it is in reference to the term as defined in the contract.

non-moving party may not simply rest on the pleadings, but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the nonmoving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

**LEGAL STANDARD**

The parties agreed that the contract is governed by Delaware law. ECF 20-3, PgID 221; *see also DP Precise, LLC v. Phoenix Insurance Company*, 2014 WL 12572733, at *4 (March 31, 2014) (parties may choose what law applies to contract claims). Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff. *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).

Contract interpretation is a question of law. *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192 (Del. 1992). Delaware adheres to the objective theory of contract interpretation. *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010). Thus, a contract should be interpreted as it would be understood by an objective, reasonable third party. *Id.* When a contract is clear and unambiguous, a court will give effect to the plain meaning of the contract's terms and provisions. *Id.* at 1159–60. A

contract is ambiguous only if the provisions are "reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc Basic Chems. Co.,* 616 A.2d at 1196. Ambiguity does not exist when a court can determine the contract's meaning "without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Id.* (internal quotations omitted).

## DISCUSSION

I. <u>The Contract Permits Defendant's Termination</u>

Two portions of the contract are relevant. Paragraph 9 provides: "[i]f the Project is completed, terminated, or significantly altered before the end of the term, [Defendant] shall be entitled to terminate [the contract] with a notice of two weeks." ECF 20-3, PgID 219. The recitals provide: "[b]y this Agreement, the parties are setting forth the basis on which [Plaintiff] will provide Services to [Defendant] and [Defendant] will purchase Services from [Plaintiff] for completion of programs including, but not limited to: GM Y1BC, GM D2UC, GM O1SL, and GM A1LL (the 'Project')." *Id.* at 217.

A single fact is necessary to construe the language as permitting Defendant's termination: Russell requested that Defendant remove Al-Kahwati's from all GM programs. The fact is established in Russell's deposition, and nothing brings it into dispute.[2]

Applying the fact to the contract, then, Defendant was clearly permitted to terminate. The contract permitted termination if there was a significant alteration to the Project. Russell's request was significant—Defendant's best client and one of the largest

---

[2] Plaintiff does assert that Russell had limited authority and was not a member of every GM program that Plaintiff worked on, and the Court will address that argument below. But although the arguments challenge the significance of Russell's request, they do not raise any doubt about whether the request was made.

4

automobile manufacturers in the world requested Al-Kahwati's removal from almost a third of the programs contemplated under the contract. And it was an alteration; Plaintiff's sole employee could no longer work on the programs. Regardless of whether the request was justified, Defendant would have been irrational not to respond to it.

II. Plaintiff's Counter-Arguments are Not Persuasive

Plaintiff's first response is that Defendant misinterprets the phrase "significant alteration" as applied to the Project. ECF 24, PgID 766. Plaintiff contends that the phrase should be limited to a change or alteration to the technical aspects of the Project. *Id.* In support of that position, Plaintiff points to the separate definition of "Services" in the contract. ECF 22, PgID 319–20.

Looking at the recitals, the Project was contemplated to include the "basis on which [Plaintiff] will provide Services to [Defendant] and [Defendant] will purchase services from [Plaintiff] for completion of programs . . . ." ECF 20-3, PgID 217. While Plaintiff is correct that Services is defined separately, its definition is incorporated into the definition of Project.

Moreover, the definition emphasizes the basis on which the Services will be provided. "Basis" is defined as "the principal component of anything" or a "fundamental ingredient." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 182 (2002). Plaintiff is correct that the technical specifications of the programs are a core part of the Project. But they are not the only components. Without a customer, there is no one to whom services may be provided, so a paying customer is a fundamental ingredient to any for-profit service agreement. A customer's dissatisfaction with the services provided—beyond the mere technical components—and a subsequent requested change is an alteration of the Project.

5

Plaintiff next argues that Russell did not have the authority to terminate Defendant's account with GM. ECF 24, PgID 764. Plaintiff adds that even if Russell could remove Al-Kahwati from her team, she could not issue a company-wide mandate precluding Al-Kahwati from providing services anywhere at GM. *Id.* Instead, Al-Kahwati could have worked on different programs from Russell or on different phases of the same program. *Id.*

The Court assumes all of plaintiff's allegations are true for purposes of summary judgment, but regardless of them, Russell's request is still a significant alteration of the Project. Even if her authority was limited, it is undisputed that Russell interfaced with Defendant on behalf of GM and requested that Al-Kahwati be removed from at least two programs. That type of request from a customer—regardless of the individual's authority—would alarm any service provider interested in maintaining business. An alteration was required to allay the customer's concern, and that alteration was significant: Plaintiff's only employee had to be isolated from Russell. Even if that meant making a change on only two programs, the number becomes significant when Plaintiff was only working on seven[3] programs.

Plaintiff lastly protests that even if Al-Kahwati had to be removed from all GM programs, it would not be a significant alteration because Defendant could have reassigned Plaintiff to a different customer. ECF 24, PgID 765. In support, Plaintiff emphasizes that: (1) the contract used the phrase "including, but not limited to" when identifying the four original GM programs, (2) Defendant advertises that its customers include 35 of the world's

---

[3] The figure of seven includes an assumption in Plaintiff's favor that the alleged 40 hours spent in 2015 working for Toyota counts as a program.

leading original equipment manufacturers, and (3) Al-Kahwati worked on a Toyota program. *Id.*

While Plaintiff is correct that the contract uses the phrase "but not limited to," this language does not imply that the contract governs an open universe of programs. Rather, the contract identifies four programs by name, and Al-Kahwati identified three additional programs he worked on under the contract. ECF 20-3, PgID 217; ECF 22-2, PgID 330. The Court has assumed that all seven of the programs comprised the Project, and still finds Russell's request to be a significant alteration. It is inconsequential that Defendant had other customers. Those customers did not have any programs that were part of the Project at the time of the significant alteration. Finally, the 40 hours Al-Kahwati allegedly worked for Toyota—when considered relative to the totality of hours and programs comprising the Project—do not render Russell's requested alteration insignificant.

III. Conclusion

For these reasons, Defendant was permitted to terminate the contract as a matter of law. Defendant therefore did not breach a contractual obligation. Consequently, Plaintiff cannot prove its claim and the Court need not address Defendant's additional arguments.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment [20] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [22] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

The order is final and closes the case.

**SO ORDERED.**

                                        s/Stephen J. Murphy, III
                                        STEPHEN J. MURPHY, III
                                        United States District Judge

Dated: September 12, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 12, 2017, by electronic and/or ordinary mail.

                                        s/David P. Parker
                                        Case Manager